FILED
SEP 2 7 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSIE O.,

                 Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

20-CV-06986-MJR
DECISION AND ORDER

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

       Plaintiff Jessie O.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 10) is denied, and defendant's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on July 24, 2018, alleging a disability onset date of February 1, 2012.  (Administrative Transcript ["Tr."] 15, 68, 151-59).  The application was initially denied on October 23, 2018.   (Tr. 75-80).   Plaintiff timely filed a request for an administrative hearing.  (Tr. 81-86).   On November 13, 2019, Administrative Law Judge ("ALJ") Rosanne M. Dummer held a video hearing from Falls Church, Virginia.  (Tr. 33-65).  Plaintiff appeared in Rochester, New York with his attorney.  A vocational expert also testified at the hearing.  The ALJ issued an unfavorable decision on January 14, 2020. (Tr. 12-32). On September 29, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.   _Scope of Judicial Review_

The Court's review of the Commissioner's decision is deferential.   Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," _Richardson v. Perales_, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  _Smith v. Colvin_, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.     <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 24, 2018.  (Tr. 17).  At step two, the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder; borderline to low average intelligence; alcohol use disorder mild; cocaine use disorder severe, in reported remission; human immunodeficiency virus (HIV) with no documented manifestations or opportunistic infections; and obesity.  (Tr. 17-18).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-19).  Prior to proceeding to step four, the ALJ determined that Plaintiff retained the following RFC:

> [M]edium work as defined in 20 CFR 416.967(c). The claimant could lift/carry fifty pounds occasionally and twenty-five pounds frequently. He could sit eight of eight hours, four hours at a time; he could stand/walk six of eight hours, three hours at a time to stand and three hours at a time to walk. He could not climb ladders/scaffolds nor work around dangerous moving machinery or at unprotected heights . . .. Secondary to mental impairments, the claimant could understand, remember, and carryout instructions for routine repetitive tasks; he could interact with coworkers and supervisors for work related and task oriented interactions. He could interact occasionally with the public on a brief and superficial basis (no negotiation, arbitration, etc.). The claimant could sustain attention and concentration for two-hour segments of time in an eight-hour day; he could adapt to changes in the work setting for routine repetitive work[.]

(Tr. 19-26).

At step four, the ALJ found that Plaintiff could perform his past relevant work as a recycler. (Tr. 26). In the alternative, the ALJ found other jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26-27). Therefore, the ALJ found that Plaintiff was not disabled or entitled to benefits. (Tr. 28).

IV.    *Plaintiff's Challenge*

Plaintiff raises numerous arguments in support of his position that the ALJ's decision is not supported by substantial evidence.  The Court finds them without merit.

Substantial evidence supports the ALJ's RFC determination.  In rendering her RFC finding, the ALJ properly considered all relevant medical and other evidence of record. (Tr. 54-56).. *See* 20 C.F.R. § 416.946(c); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (the ALJ weighs all evidence available to render an RFC finding consistent with the record).

The ALJ properly evaluated the opinion evidence in the record. First, the ALJ found persuasive the opinion of state agency medical consultant Dr. A. Vinulan, M.D. who opined that Plaintiff did not have any severe impairments, as he had less than mild limitations, as it was consistent with the record.  (Tr. 24, 71).

The ALJ also found the opinions of medical experts Drs. Jack Thomas, PhD, and Eric Puestow, M.D., to be persuasive. (Tr. 23-25).  Dr. Thomas opined that Plaintiff had mild-to-moderate mental limitations, and that in a work setting, Plaintiff could perform simple, routine, and repetitive tasks; and can tolerate occasional contact with supervisors, co-workers, and the public. (Tr. 23, 545).  Dr. Thomas also opined that Plaintiff's

substance abuse was "separate and distinct" and thus not material to his impairments. (Tr. 23, 544).  Dr. Puestow opined that Plaintiff did not have any exertional or stand/walk limitations; he could lift and carry over 100 pounds continuously; and he could sit for eight hours, and stand/walk for four hours in an eight-hour workday. (Tr. 555-57).

Next, the ALJ reasonably found the opinion of treating physician Dr. Matthew J. Brown, M.D., to be somewhat persuasive. (Tr. 25).  Dr. Brown opined that Plaintiff could engage in full-time employment on a sustained basis; would not miss any days from work, did not need to take breaks in an eight-hour workday, and would be off-task for only five percent of the workday; he could work eight hours per day with certain limitations due to back and hip pain that Plaintiff had for four months (but the pain was not expected to last at least 12 months); emotional factors did not contribute to Plaintiff's symptoms and functional limitations; and Plaintiff's mental limitations did not preclude him from performing any aspect of a job position.  (Tr. 25, 495-99).  Dr. Brown also opined that Plaintiff was unlimited in sitting, could stand for 30 minutes before needing to change positions, could stand and walk for a total of two hours in an eight-hour workday, and could frequently lift up to ten pounds, occasionally lift up to 20 pounds, and rarely lift up to 50 pounds.  (Tr. 498).

The ALJ also found the opinion of consultative examiner Dr. Harbiner Toor, M.D., to be somewhat persuasive, as Dr. Toor found that Plaintiff had mild-to-moderate limitations in standing and walking for a long time; and, that his pain and headaches could interfere with his physical routine or balance.  (Tr. 24, 289).

The ALJ found that these opinions were supported by the unremarkable treatment notes.  (Tr. 23-25). *See* 20 C.F.R. § 416.920c(b)(2) (supportability and consistency are

the most important factors in determining persuasiveness of medical opinions), (c)(1) (the more relevant evidence and supporting explanations presented by a medical source in support of an opinion, the more persuasive the opinion will be), (c)(2) (the more consistent a medical opinion is with other evidence in the record, the more persuasive the medical opinion will be).

For example, diagnostic imaging was largely unremarkable. On November 1, 2019, Plaintiff underwent an x-ray of his right hip, which showed no fracture and mild degenerative narrowing of the right hip joint space.  (Tr. 420).  An x-ray of the lumbar spine on that same day showed no compression deformity of the lumbar spine, no scoliosis, well-maintained vertebral body height, mild degenerative disc change at the L3-L4 disc level, and mild loss of the intervertebral disc height.  (Tr. 423).

Similarly, the ALJ noted that Plaintiff's treatment notes were minimal during the relevant period and showed largely normal physical examination findings.  (Tr. 21-22). For instance, Plaintiff routinely appeared well-developed and well-nourished; was in no distress, alert, and oriented to person, place, and time; had normal heart rate rhythm; no respiratory distress and normal breathing sounds; no tenderness in the abdomen; normal range of motion in the neck and in his musculoskeletal examination; no edema, clubbing, or cyanosis in the extremities; 5/5 (full) strength in the upper and lower extremities bilaterally; negative straight leg raise bilaterally; and had a normal mood and affect, normal behavior, normal judgment, and normal thought content.  (Tr. 339-42, 389-90, 398, 411, 417-18, 433).

The ALJ noted that Drs. Thomas, Puestow, and Vinluan's opinions were consistent with the largely unremarkable treatment notes.  (Tr. 23-25).  The ALJ accounted for the

physicians' opinions and findings in the record by limiting Plaintiff to a reduced range of medium work, such as that he could lift/carry fifty pounds occasionally and twenty-five pounds frequently; he could sit eight of eight hours, four hours at a time; he could stand/walk six of eight hours, three hours at a time to stand and three hours at a time to walk.  (Tr. 19).  The ALJ also limited Plaintiff to repetitive tasks, limited interaction with others, and maintaining attention and concentration for two-hour segments of time in an eight-hour day.  (Tr. 19).  Accordingly, the ALJ properly considered the opinion evidence in accordance with the new medical regulations.[3]

Plaintiff argues that the ALJ erred in relying more heavily on the opinions of the non-examining physicians, such as Drs. Thomas, Puestow, and Vinluan, as opposed to the examining physicians, Drs. Toor and Brown.  However, Plaintiff's arguments misconstrue the new medical evidence regulations.

First, the new regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).  Accordingly, the ALJ did not need to give any specific weight to a certain opinion, even if that opinion was based on an examination.

Second, under the new regulations, the ALJ considers the supportability and consistency factors to be the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical

---

[3] On January 18, 2017, the Commissioner published revisions to its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).  Because Plaintiff applied for benefits after March 27, 2017, the ALJ correctly applied the new set of regulations for evaluating medical evidence.  The Court assumes the parties' familiarity with the new regulations.

finding. 20 C.F.R. § 416.920c(b)(2). The ALJ must explain in his or her decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. *Id.*

The ALJ properly adhered to the new medical source regulations by considering the supportability and consistency factors of all the opinions of record.  In so doing, the ALJ could reasonably find that the opinions of the state agency medical consultant, Dr. Vinluan, and the opinions of the medical experts, Drs. Thomas and Puestow, were more consistent with the record and supported by the medical evidence, than the opinions of consultative examiner Dr. Toor, and treating physician Dr. Brown.  (Tr. 23-25).

Importantly, state agency medical consultants are highly qualified physicians who are also experts in social security disability evaluation, and their opinions are among those an ALJ will consider. 20 C.F.R. § 416.913a(b)(1). Indeed, the Second Circuit has recognized that opinions from these non-examining sources may even override treating source opinions, provided they are supported by evidence in the record. *See Frye ex rel. A.O. v. Astrue,* 485 F.App'x 484, 487 (2d Cir. Jun. 13, 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (ALJ not required to accept the opinion of a treating physician over other contrary opinions if the latter are more consistent with the weight of the evidence); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008).

Similarly, the ALJ could reasonably find the opinions of medical experts Drs. Thomas and Puestow to be persuasive because they were consistent with the largely

normal examination findings discussed above. *See* 20 C.F.R. § 416.920c(c)(2)*; see also Heagney-O'Hara v. Commissioner*, 646 F. App'x 123, 126 (2d Cir. 2016) (the ALJ correctly gave great weight to the opinion of a medical expert; even though he lacked a treating relationship because his opinion was consistent with the objective medical evidence in the record.); *Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (holding that it was proper for the ALJ to rely on medical expert opinion in assessing claimant's functioning).

For instance, medical expert Dr. Thomas found only mild-to-moderate mental limitations, and the ALJ accounted for these limitations in the RFC, by limiting Plaintiff to only occasional interactions with others, routine repetitive tasks, and sustaining attention and concentration for two-hour segments of time.  (Tr. 19, 23-24, 542-48).  This is consistent with Plaintiff's own testimony at the administrative hearing that he was not being treated for any mental health conditions. (Tr. 48).  Over a year prior to the hearing, Plaintiff reported that he took Zoloft for his anxiety, and it was working well.  (Tr. 431).  This was also consistent with the normal mental status examination findings in the record, such as that Plaintiff routinely appeared well-developed and well-nourished; was alert and oriented to person, place, and time; and had normal mood and affect, normal behavior, normal judgment, and normal thought content.  (Tr. 339-42, 389-90, 411, 417-18, 433).  Notably, Plaintiff had follow-up appointments with his primary care physician Dr. Brown, but Plaintiff did not seek or receive any specialized mental health treatment.

Plaintiff argues that, under the facts and circumstances in this case, the ALJ was obligated to seek a consultative intellectual examination of the Plaintiff.  However, based on the largely normal medical findings discussed above, the ALJ reasonably could have

decided not to order a consultative intellectual examination.  The ALJ was not obligated to order an additional consultative examination because the decision to do so is within the discretion of the Commissioner. 20 C.F.R. § 416.919a. Indeed, a consultative examination may be ordered if a medical source does not provide sufficient medical evidence regarding a claimant's impairment to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 416.912(b)(2), 416.917. *See also, Tankisi v. Comm'r of Soc. Sec.*, 521 F.App'x 29, 32 (2d Cir. Apr. 2, 2013) ("an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it"). However, the ALJ was not required to order additional intelligence testing because the facts of this case neither warranted nor suggested a need for it.  *See Bushey v. Colvin,* 607 F. App'x 114, 116 (2d Cir. 2015); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013).

There was no gap in the record because the ALJ did not order a consultative intellectual examination, as Plaintiff asserts.  Plaintiff has not shown that the ALJ had any obligation to further develop the record, given that the record was sufficient for the ALJ to make a determination, and ultimately it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See, e.g.*, 20 C.F.R. § 416.914 ("We need specific medical evidence to determine whether you are disabled or blind. You are responsible for providing that evidence."); 20 C.F.R. § 416.945(a) ("[Y]ou are responsible for providing the evidence we will use to make a finding about your [RFC]."); 20 C.F.R. § 416.912(a) (the claimant has the burden of proving that he or she is disabled).

The ALJ is not required to obtain additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *see* 20 C.F.R. § 416.920b(a), (b)(1).   Here, the record contained sufficient evidence for the ALJ to assess Plaintiff's claim, including treatment notes from his treating providers, a consultative examination, and Plaintiff's statements regarding his symptoms, limitations, and daily activities. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (the ALJ was entitled to weigh all of the evidence and make an RFC finding based on the record).   Plaintiff's own treating physician, Dr. Brown, opined that Plaintiff's mental limitations did not preclude him from performing any aspect of a job position.  (Tr. 25, 495-99).   Plaintiff has not identified any specific gaps in the record that warrant further record development. *See Cook v. Comm'r of Soc. Sec.,* 818 F. App'x 108, 110 (2d Cir. 2020) (ALJ was not faced with "any clear gaps in the administrative record" that gave rise to an affirmative obligation to seek a medical opinion to support the claimant's RFC) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information….")).

As noted above, Plaintiff had normal mental status examination findings during the relevant period (Tr. 339-42, 389-90, 411, 417-18, 433), and at the time of the hearing, he testified that he was not being treated for any mental health conditions.  (Tr. 48). The ALJ also noted that Plaintiff was able to engage in a number of daily activities, such as doing volunteer work to maintain his services, cooking daily, cleaning, shopping, doing laundry, maintaining his own personal grooming, listening to the radio, and watching television.

(Tr. 18-19, 42-43, 51, 287).  Accordingly, the ALJ did not need to order a consultative examination, as the ALJ had sufficient evidence in the record to make her decision.

As to Plaintiff's physical impairments, medical expert Dr. Puestow concluded that Plaintiff did not have any exertional or stand/walk limitations; he could lift and carry over 100 pounds continuously; and he could sit for eight hours, and stand/walk for four hours in an eight-hour workday.  (Tr. 555-57).  Treating physician Dr. Brown opined that Plaintiff could engage in full-time employment on a sustained basis; would not miss any days from work, did not need to take breaks in an eight-hour workday, and would be off-task for only five percent of the workday; he could work eight hours per day with certain limitations due to back and hip pain that Plaintiff had for four months (but the pain was not expected to last at least 12 months).  (Tr. 25, 495-99).

This is consistent with Plaintiff's own testimony that he did volunteer work to receive services, and his work involved "a lot of lifting."  (Tr. 39-40, 416). These opinions are also consistent with the normal diagnostic imaging results (Tr. 420-23); and the normal physical examination findings of normal range of motion and 5/5 (full) strength in the lower and upper extremities bilaterally; no edema, clubbing, or cyanosis in the extremities; and negative straight leg raise bilaterally.  (Tr. 339, 389-90, 417-18). His treatment notes also showed that Plaintiff's HIV was controlled with Alafen, he was tolerating the medication well, his blood counts and viral load were stable, and his HIV was undetectable as of December 2018. Tr. 397.

Accordingly, the ALJ limited Plaintiff to a reduced range of medium work, except he could lift/carry fifty pounds occasionally and twenty-five pounds frequently; could sit eight of eight hours, four hours at a time; he could stand/walk six of eight hours, three

hours at a time to stand and three hours at a time to walk; and he should not climb ladders/scaffolds, work around dangerous moving machinery, or at unprotected heights. (Tr. 19).

Plaintiff argues that the ALJ should have afforded more weight to the opinions and additional limitations outlined by consultative examiner Dr. Toor and treating physician Dr. Brown. Plaintiff specifically argues that the ALJ should have afforded greater weight to Dr. Brown's limitations and thus assigned a sedentary RFC, such as Plaintiff could stand for 30 minutes before needing to change positions, could stand and walk for a total of two hours in an eight-hour workday, and could frequently lift up to ten pounds, occasionally lift up to 20 pounds, and rarely lift up to 50 pounds. *See* Tr. 498. The Court finds this argument without merit.

As discussed above, under the new medical evidence regulations, the ALJ is not required to defer to any medical opinion or give any specific evidentiary weight, even if the author of the opinion examined Plaintiff. *See* 20 C.F.R. § 416.920c(a) (2017). Instead, the ALJ was required to evaluate the supportability and consistency of each of the opinions, and then explain the persuasiveness of each opinion, which the ALJ did in this case. *See* 20 C.F.R. § 416.920c(b)(2).

The ALJ explained that Dr. Brown's limitations were inconsistent with the rest of his opinion that Plaintiff could engage in full-time employment on a sustained basis; would not miss any days from work; did not need to take breaks in an eight-hour workday; would be off-task for only five percent of the workday; and, could work eight hours per day with certain limitations due to back and hip pain that Plaintiff had for four months (but the pain was not expected to last at least 12 months). (Tr. 25, 495-99). The limitations were also

inconsistent with Plaintiff's testimony that he was currently working and doing "a lot of lifting" (Tr. 39-40, 416); and with the normal physical examination findings that Plaintiff had normal range of motion and 5/5 (full) strength in the lower and upper extremities bilaterally; no edema, clubbing, or cyanosis in the extremities; and negative straight leg raise bilaterally. (Tr. 339, 389-90, 417-18). *See Micheli v. Astrue*, 501 F. App'x 26, 28-29 (2d Cir. 2012) (ALJ properly discounted treating source's assessment because it was internally inconsistent, and inconsistent with other substantial evidence of record).

Plaintiff also argues that the ALJ should have afforded greater weight to the limitations outlined by consultative examiner Dr. Toor, that Plaintiff had mild-to-moderate limitations in standing and walking, which is inconsistent with an RFC for medium work. (Tr. 289). However, as discussed above, the ALJ need not afford any medical opinion specific evidentiary weight, but only need to explain the persuasiveness of each opinion by considering the supportability and consistency factors. *See* 20 C.F.R. § § 416.920c(a), (b)(2).

First, mild-to-moderate limitations in standing and walking is not inconsistent with a reduced range of medium work, as the RFC allows for standing/walking six of eight hours, three hours at a time to stand and three hours at a time to walk. (Tr. 19). *See Harrington v. Colvin,* 2015 WL 790756, *14 (W.D.N.Y. 2015) ("[a]lthough some caselaw suggests that moderate or severe limitations in prolonged walking are inconsistent with full range light or medium work, ... other courts do not consider an opinion assessing moderate limitations for sitting, standing, and walking inconsistent with a determination that claimant can perform the requirements of light or medium work" and that, "In this case, Harrington's ability to sit, stand or walk for up to six hours per day is supported by

other substantial evidence in the record, and the ALJ provided reasons "tending to support the finding that, despite the moderate limitations[,] ... [plaintiff] could still perform light [or medium] work.").

In any event, Dr. Toor's own examination findings are arguably not consistent with his opinion of mild-to-moderate limitations in standing and walking, as Dr. Toor observed that Plaintiff had full flexion, extension, lateral flexion, and full rotary movement bilaterally in the cervical and lumbar spines; no scoliosis, kyphosis, or abnormality in the thoracic spine; negative straight leg raising bilaterally in the sitting and supine positions; full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally; stable joints with no evident subluxations, contractures, ankylosis, or thickening; and no redness, heat, swelling, or effusion; and 5/5 (full) strength and no cyanosis, clubbing, edema, significant varicosities, trophic changes, sensory deficit, or muscle atrophy, in the upper and lower extremities. (Tr. 289).

Dr. Toor's limitations are also arguably inconsistent with the record evidence that showed normal diagnostic imaging results (Tr. 420-23), and the normal physical examination findings that Plaintiff had normal range of motion and 5/5 (full) strength in the lower and upper extremities bilaterally; no edema, clubbing, or cyanosis in the extremities; and negative straight leg raise bilaterally. (Tr. 339, 389-90, 417-18). *See Micheli*, 501 F. App'x at 28-29 (ALJ properly discounted treating source's assessment because it was internally inconsistent, and inconsistent with other substantial evidence of record). Plaintiff also testified that he was currently working and doing "a lot of lifting." (Tr. 39-40, 416).

Accordingly, the ALJ properly considered the medical and opinion evidence, and the RFC is supported by substantial evidence.

Further, the ALJ properly considered Plaintiff's alleged symptoms and subjective complaints within the regulatory framework, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record.  *See* (Tr. 20-26); 20 C.F.R. § 416.929; SSR 16-3p.

For instance, the ALJ considered Plaintiff's daily activities, noting that he was able to do volunteer work for 14 hours per week, maintain his own personal grooming, cook daily, clean, do laundry, go shopping, listen to the radio, and watch television. (Tr. 18-19, 39-40, 42-42, 51, 28). *See* 20 C.F.R. § 416.929(c)(3)(i), (adjudicator properly considers the individual's daily activities); SSR 16-3p; *see also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that Plaintiff's activities of daily living was an important indicator of her true level of physical functioning).

The ALJ also discussed Plaintiff's treatment modalities. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) (adjudicator properly considers the treatment modalities utilized, and the effectiveness of treatment to relieve pain and other symptoms). For instance, the ALJ noted that Plaintiff responded well to treatment.  (Tr. 20).  Plaintiff testified he was not being treated for any mental health conditions.  (Tr. 48).   During the relevant period, Plaintiff indicated in a treatment session that he was taking Zoloft for his anxiety was working well.  (Tr. 431).  Similarly, Plaintiff reported that his anxiety was controlled with Sertraline, and he was tolerating the medication well without any side effects, and he denied any suicidal or homicidal ideations.  (Tr. 397, 404). Notably, Plaintiff had follow-up

appointments with his primary care physician Dr. Brown, but Plaintiff did not seek or receive any mental health treatment.

Plaintiff also indicated in a treatment session that his HIV was controlled with Alafen, he was tolerating the medication well, his blood counts and viral load were stable, and his HIV was undetectable as of December 2018. (Tr. 397). Significantly, the Second Circuit has found that a claimant's receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms. *See Botta v. Colvin,* 2016 WL 6117724 at *1 (2d Cir. Oct. 19, 2016); *Guerra v. Colvin*, 618 F. App'x 23, 25 (2d Cir. 2015); *Church v. Colvin,* 195 F.Supp.3d 450, 456-57 (N.D.N.Y. 2016) (conservative treatment supports non-disability determination when considered in combination with other substantial evidence); *see also Penfield v. Colvin,* 563 Fed. Appx. 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms); *Netter v. Astrue,* 272 F. App'x 54, 56 (2d Cir. Apr. 8, 2008). Therefore, Plaintiff's daily activities and treatment modalities do not support a finding that Plaintiff's condition is disabling.

In sum, the ALJ properly considered the totality of the evidence, including the opinion and medical evidence in the record, when determining the RFC and substantial evidence supports the ALJ's RFC determination.

## <u>CONCLUSION</u>

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:          September 27, 2022
                   Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge